UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL HOLMBERG, | CASE NO. 3:15-CV-05374-RJB-JRC |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | NOTED FOR: DECEMBER 16, 2016 |
| DEPARTMENT OF CORRECTIONS OF WASHINGTON, et al. | |
| Defendants. | |

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge J. Richard Creatura. Presently before the Court is defendants' motion for summary judgment. Dkt. 44.

While incarcerated at Stafford Creek Corrections Center, plaintiff alleges that defendant Roiko knew he was a frequent litigator and that she retaliated against him when she infracted plaintiff for possessing other inmates' personal property. The infraction was ultimately dismissed. Because plaintiff has failed to show that defendant Roiko lacked any legitimate penological objective in issuing the infraction, the Court concludes that plaintiff has failed to

1  sufficiently rebut defendants' summary judgment showing regarding his First Amendment claim.

2  Accordingly, the Court recommends that defendants' motion for summary judgment be granted

3  and that this action be dismissed. The Court recommends dismissing plaintiff's state law claims

4  without prejudice. The Court also recommends denying all other pending motions as moot.

5  **BACKGROUND**

6       This case was removed from Thurston County Superior Court on June 4, 2015. Dkt. 1.

7  Defendants filed a motion for judgment on the pleadings on November 6, 2015. Dkt. 8. Plaintiff

8  filed a response, Dkt. 11, defendants filed a reply, Dkt. 13, and plaintiff filed a surreply, Dkt. 15.

9       On December 28, 2015, the undersigned entered a report and recommendation granting in

10  part and denying in part defendants' motion for judgment on the pleadings. Dkt. 16. On February

11  2, 2016, District Judge Bryan adopted, in part, and declined to adopt, in part, the December 28,

12  2015 report and recommendation. Dkt. 20. Defendants then filed a motion for reconsideration

13  (Dkt. 21) challenging one portion of the Court's decision with respect to Eleventh Amendment

14  immunity (Dkt. 20 at 6). District Judge Bryan granted defendants' motion for reconsideration to

15  the extent that the Court denied dismissal of plaintiff's claims against the DOC and damages or

16  other retroactive relief against defendants Glebe and Warner in their official capacities. Dkt. 24

17  at 4. On March 2, 2016, plaintiff filed his first amended complaint. Dkt. 23.

18       The remaining claims are plaintiff's claims for retaliation against defendant Roiko,

19  claims against defendants Glebe and Warner in their individual capacities and any facts

20  supporting injunctive relief, and state law claims. *See* Dkts. 16, 20, 24.

21       Defendants filed the pending motion for summary judgment on September 8, 2016. Dkt.

22  44. In support of their motion, defendants submitted the declaration of defendant Cheryl Roiko.

23  Dkt. 45. Defendants served plaintiff with a *Rand* notice and copies of the motion for summary

24

1  judgment and supporting documentation on September 8, 2016 and plaintiff filed his response on

2  October 3, 2016. *See* Dkts. 44, 45, 46, 49. The Court notes that plaintiff titled his response a

3  "partial response" to defendants' motion for summary judgment. Dkt. 49. However, because

4  plaintiff did not file any further documentation or a supplemental response, and his time to do so

5  has passed, the Court interprets plaintiff's "partial response" as a complete response to

6  defendants' motion for summary judgment.  Defendants filed their reply on October 7, 2016.

7  Dkt. 53.

8        Plaintiff's first amended complaint was signed under penalty of perjury and is being

9  considered as evidence. Dkt. 23 at 29. Because plaintiff is *pro se*, the Court "must consider as

10  evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in

11  motions and pleadings, where such contentions are based on personal knowledge and set forth

12  facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury

13  that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918,

14  923 (9th Cir. 2004). Plaintiff also submits a declaration in opposition of defendants' motion. Dkt.

15  49-1.

16                              **STATEMENT OF FACTS**

17        The majority of the facts presented by plaintiff and defendants are undisputed. However,

18  the parties dispute the circumstances regarding plaintiff's telephone conversation with Mr. Carr

19  and Mr. Lowry.  Those discrepancies are outlined below.

20        Plaintiff, Michael Holmberg, is an inmate currently in the custody of the Washington

21  Department of Corrections ("DOC") at the Stafford Creek Corrections Center ("SCCC"). Dkt.

22  23. In 2012, defendant Roiko was plaintiff's counselor. Dkt. 45, Exhibit 1, Declaration of Cheryl

23

24

REPORT AND RECOMMENDATION - 3

1    Roiko, ¶ 4. Defendant Roiko often facilitated telephone calls in her office between inmates and

2    opposing counsel, including the Washington State Attorney General's office. *Id.*

3           On March 1, 2012, defendant Roiko facilitated a telephone call in her office between

4    plaintiff and Assistant Attorney General ("AAG") Douglas Carr. Dkt. 45, Exhibit 1, ¶ 5.

5    According to his verified complaint, plaintiff states that, "[a]t the conclusion of the conversation

6    with Assistant Attorney General (AAG) Carr, Plaintiff thanked Counselor Roiko for her

7    cooperation. Counselor Reiko [*sic*] responded 'Your [*sic*] welcome, I'm familiar with these

8    things, Mr. Sivla was in my office quite a bit - you guys are infamous.'" Dkt. 23 at 9. Defendant

9    Roiko does not recall the specifics of the conversation between Mr. Carr and plaintiff but recalls

10   stating that she was familiar with dealing with offenders who have telephone calls with opposing

11   counsel. Dkt. 45, Exhibit 1, ¶ 5. Defendant Roiko declares that she never told plaintiff that he

12   was infamous and has never been aware of him being an infamous litigator. Dkt. 45, Exhibit 1, ¶

13   5.

14          On May 8, 2012, plaintiff conferred with another AAG, Mr. Lowy, in defendant Roiko's

15   office regarding a discovery dispute in an active civil rights case. Dkt. 23 at 10. During the

16   conversation, Mr. Lowy said that if plaintiff could provide him evidence of a pattern and practice

17   of SCCC mailroom personnel mishandling prisoner mail, Mr. Lowy would be more cooperative

18   in the discovery process. Plaintiff claims that he told Mr. Lowy that plaintiff would make Mr.

19   Lowy a believer and that plaintiff would provide the evidence. Dkt. 23 at 10. Defendant Roiko

20   has no recollection of the specifics of plaintiff's conversation with Mr. Lowy. Dkt. 45, Exhibit 1,

21   ¶ 6.

22          On May 17, 2012, plaintiff asked defendant Roiko if she would make legal copies for

23   him and defendant Roiko gave the paperwork to the unit office assistant to make photocopies.

24

Dkt. 45, Exhibit 1, ¶ 7. The office assistant informed defendant Roiko that she had trouble copying two of the papers because envelopes were taped to the paper. Dkt. 45, Exhibit 1, ¶ 8. The office assistant then observed that the envelopes were addressed to inmate Dana Boyer, who is another inmate at SCCC, not plaintiff. Dkt. 45, Exhibit 1, ¶ 8. The office assistant asked that defendant Roiko scan the legal mail, which defendant Roiko had not yet done. Dkt. 45, Exhibit 1, ¶ 9.

As a part of her job duties, defendant Roiko was required to scan documents placed in outgoing mail to make sure they did not contain contraband. Dkt. 45, Exhibit 1, ¶ 9. Defendant Roiko took the original paperwork that plaintiff had asked to be copied back to her office and scanned it to ensure that it met the DOC legal mail policy. Dkt. 45, Exhibit 1, ¶ 10. Defendant Roiko declares that she did not read the paperwork but saw that the names of five other inmates Richard Bryan, DOC No. 893416; Dana Boyer, DOC No. 353844; Benjamin Braaten, DOC No. 315355; Harry Polston, DOC No. 724147; and Lorenzo Sandoval, DOC No. 283632 were located at the top of each document. Dkt. 45, Exhibit 1, ¶ 10.

Based on this information, defendant Roiko declares that she concluded that it was very probable that plaintiff was attempting to copy personal paperwork that belonged to these five other inmates. Dkt. 45, Exhibit 1, ¶ 10.  Defendant Roiko then went to the office of the SCCC Litigation Liaison and Public Records Officer, Sheri Izatt, and Ms. Izatt said that plaintiff had not obtained this information via public disclosure and that he should not be in possession of other offender's paperwork. Dkt. 45, Exhibit 1, ¶ 11. Plaintiff also admitted to defendant Roiko that the other offenders gave him the paperwork and that he had not obtained it through the public disclosure process. Dkt. 45, Exhibit 1, ¶ 15

1   Defendant Roiko confiscated plaintiff's paperwork as contraband and wrote search

2   reports. Dkt. 45, Exhibit 1, ¶ 12; Dkt. 18-1 at 2-20. Defendant  Roiko called plaintiff into the

3   custody unit supervisor's office and explained the situation to him. Dkt. 45, Exhibit 1, ¶ 13.

4   Defendant Roiko declares that plaintiff was upset and said that DOC officials could not read his

5   legal mail and that he believed that they had just shown that the DOC does read legal mail. Dkt.

6   45, Exhibit 1, ¶ 13. Plaintiff was told that DOC employees are required to scan mail for reasons

7   such as this as his mail contained the property of other offenders. Dkt. 45, Exhibit 1, ¶ 13.

8   Defendant Roiko declares that plaintiff said "I have done this for a long time and you can obtain

9   evidence from other offenders." Dkt. 45. Exhibit 1, ¶ 13. Plaintiff was told that they would sort it

10  out the next day. Dkt. 45, Exhibit 1, ¶ 13. Plaintiff said he would take care of it other ways, and

11  as he left the office, he said, "Ma'am, this is just wrong." Dkt. 45, Exhibit 1, ¶ 13.

12      On May 27, 2012, Sergeant R. Judd conducted a General Infraction Hearing and

13  defendant Roiko did not attend the hearing. Dkt. 23 at 15; Dkt. 45, Exhibit 1, ¶ 23. Plaintiff pled

14  not guilty. Dkt. 23 at 15. Sgt. Judd retrieved the documents seized by defendant Roiko on May

15  17, 2012 and after inspecting the documents, found that plaintiff was not guilty, stating that

16  plaintiff was not in possession of other inmates' legal mail. Dkt. 23 at 15. The infraction was

17  then dismissed. Dkt. 23 at 15.

18

19                      **STANDARD OF REVIEW**

20      Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant

21  summary judgment if the movant shows that there is no genuine dispute as to any material fact

22  and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or

23  is genuinely disputed must support the assertion by:

24

REPORT AND RECOMMENDATION - 6

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn there from must be viewed in the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

As the party moving for summary judgment, defendants have the initial burden to demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some

1    'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson*, 477

2    U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No

3    longer can it be argued that any disagreement about a material issue of fact precludes the use of

4    summary judgment."). In other words, the purpose of summary judgment "is not to replace

5    conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

6    *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly

7    support an assertion of fact or fails to properly address another party's assertion of fact as

8    required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting

9    materials--including the facts considered undisputed--show that the movant is entitled to it[.]"

10   Fed R. Civ. P. 56(e)(3).

11                                        **DISCUSSION**

12   **A. First Amendment Retaliation**

13         To prevail on a retaliation claim under § 1983, a plaintiff must show: (1) an adverse

14   action taken by a state action against the inmate (2) because of (3) that prisoner's protected

15   conduct, and that such action (4) chilled the inmate's exercise of his First Amendment right or

16   would chill or silence the speech of a person of ordinary firmness and (5) the action did not

17   reasonably advance a legitimate correctional goal.  *Rhodes v. Robinson,* 408 F.3d 559, 567–68

18   (9th Cir. 2005); *Resnick v. Hayes*, 213 F.3d 443, 449 (9thCir. 2000); *Barnett v. Centoni*, 31 F.3d

19   813, 816 (9th Cir. 1994); *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir. 2012).

20         In order to survive summary judgment, the plaintiff bears the burden of showing that

21   there was no legitimate penological objective to the defendant's actions.  *See Pratt v. Rowland*,

22   65 F.3d 802, 806 (9th Cir. 1995).  A retaliation claim is not plausible if there are "more likely

23   explanations" for the action.  *Iqbal*, 129 S.Ct. at 1951; *see, e.g., Pratt*, 65 F.3d at 808. In

24

1  evaluating a retaliation claim, the Court is required to "'afford appropriate deference and

2  flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for

3  conduct alleged to be retaliatory." *Pratt,* 65 F.3d at 807 (*quoting Sandin,* 515 U.S. 472, 482

4  (1995) ("federal courts ought to afford appropriate deference and flexibility to state officials

5  trying to manage a volatile environment" (citations omitted)). "Security, of course, is the

6  paramount concern of prison administrators. As the Supreme Court has noted: 'The essence of a

7  correctional counselor's job is to maintain prison security.' " *Teamsters Local Union No. 117 v.*

8  *Washington Dept. of Corrections,* 789 F.3d 979 (9th Cir. June 12, 2015) (*quoting Dothard v.*

9  *Rawlinson,* 433 U.S. 321, 335, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977)) (further citation omitted).

10  "[I]nstitutional security ... is 'central to all other corrections goals.' " *Hudson v. Palmer,* 468

11  U.S. 517, 527–28, (1984) (*quoting Pell v. Procunier,* 417 U.S. 817, 823 (1974)).

12  **1.  Defendant Roiko**

13        Plaintiff alleges that he was infracted by defendant Roiko for attempting to send

14  discovery documents to opposing counsel including: "five declarations and attachments

15  consisting of grievances and other related documents demonstrating 16 acts of mishandling

16  prisoner mail over a 21 month period, to support my contention of a pattern and practice." Dkt.

17  23 at 27. Plaintiff alleges that defendant Roiko's actions constituted retaliation because she

18  believed that plaintiff was a frequent litigator. Dkt. 23. Defendants contend that plaintiff was not

19  engaged in any protected conduct and that defendant Roiko's conduct furthered legitimate

20  correctional goals. Dkt. 44 at 9-12.

21        Despite the issue of fact as to whether defendant Roiko was aware or made any

22  statements that plaintiff was a frequent litigator, plaintiff has failed to show that defendants are

23  not entitled to summary judgment as to this claim. Assuming without deciding that plaintiff

24

1   engaged in protected speech, plaintiff fails to show that the infraction issued by defendant Roiko

2   did not advance a legitimate penological goal.

3   Plaintiff bears the burden of proving the absence of a legitimate correctional goal. *See*

4   *Pratt,* 65 F.3d at 806. The Court is required to afford deference and flexibility to prison officials

5   in the evaluation of proffered legitimate penological reasons for conduct that is allegedly

6   retaliatory and a retaliation claim fails if there are more likely explanations for the actions. *See*

7   *Pratt,* 65 F.3d at 807.

8   Defendants have presented evidence showing that defendant Roiko's actions advanced

9   the legitimate penological goal of preserving the safety and security of SCCC inmates and staff.

10   Dkt. 45. *See Barnett v. Centoni,* 31 F.3d 813, 815–16 (9th Cir. 1994) (prison officials have a

11   legitimate penological interest in the preservation of institutional order and discipline).

12   Defendant Roiko declares that she issued an infraction to plaintiff because based on the

13   evidence, her own investigation and plaintiff's admissions, she believed he had violated the DOC

14   policy in attaching other inmate's personal property to plaintiff's legal correspondence. Dkt. 45,

15   Exhibit 1, ¶ 14, 22.

16   DOC policy 590.500 states that an inmate assisting another inmate in legal matters may

17   possess the other inmate's legal documents/papers only in the law library during regular law

18   library hours when both inmates are present. Dkt. 45, Exhibit 1, ¶ 14. All personal legal

19   documents and papers must be retained by the party or parties directly involved in the legal

20   matter. Dkt. 45, Exhibit 1, ¶ 14. DOC Policy 440.000 states that inmates "may not trade, sell,

21   buy, barter, loan, or give away any personal property to another offender, another offender's

22   family and/or friends, or staff." Dkt. 45, Exhibit 1, ¶ 19; Dkt. 8-1 at 34. Attachment 1 to DOC

23   Policy 450.100 lists items that are considered unauthorized. Dkt. 45, Exhibit 1 ¶ 2; Dkt. 8-1 at

24

18-22. Item No. 17 in Attachment 1 lists "[m]ail purported to be legal mail, but upon visual scanning for contraband is determined to be general correspondence." Dkt. 8-1 at 20. Item No. 22 lists "mail containing another offender's correspondence or items, such as stickers/labels, stamps ...." *Id.*

Defendant Roiko declares that the rationale behind the rule forbidding offenders from possessing the property of other offenders is that if an offender possesses the property of another offender, the offender may have stolen it or otherwise obtained it illegally. Dkt. 45, Exhibit 1, ¶ 24.  Defendant Roiko declares that theft and inmates obtaining items through unauthorized channels are common issues in prison. Dkt. 45, Exhibit 1, ¶ 20. Defendant Roiko also declares that it is the duty of DOC employees who observe an act of inmate misconduct that constitutes a general infraction to enforce prison rules. Dkt. 45, Exhibit 1, ¶ 22.

According to defendant Roiko, a prison has strong interest maintaining order in the institution by maintaining policies that promote lawful conduct. Dkt. 45, Exhibit 1, ¶ 24. Inmates are not permitted to trade, sell, buy, barter, loan, or give away any personal property to another offender because that conduct may be done in exchange for favors that threaten the security of the institution. Dkt. 45, Exhibit 1, ¶ 25. By way of example, defendant Roiko states that an offender might trade smuggled illegal drugs in exchange for another inmate's property. Dkt. 45, Exhibit 1, ¶ 25. Defendant Roiko also declares that the DOC also has a strong interest in preventing inmates from coercing or manipulating other inmates into giving them their property and that disputes over such issues can lead to violence, endangering the physical safety of both staff members and other inmates. Dkt. 45, Exhibit 1, ¶ 26.

In light of defendant Roiko's concern that plaintiff had stolen the documents, or obtained them illegally, and that inmates are not permitted to give away, buy, trade, or sell personal

1    property to other inmates, defendant Roiko could take steps to address such issues. Dkt. 45,

2    Exhibit 1, ¶ 24. It is evident that allowing inmates to possess each other's personal property,

3    threatens the safety and security of the prison and can lead to violence or endanger the safety of

4    inmates and staff members. *Id.* at ¶ 24-26. One of the primary goals of the prison system is to

5    promote a safe and secure environment within the prisons for staff, inmates, and community

6    members. *See Bell v. Wolfish,* 441 U.S. 520, 546 (1979).

7         Because defendants have presented affirmative evidence negating an essential element of

8    plaintiff's claim, plaintiff, as the nonmoving party, "must do more than simply deny the veracity

9    of everything offered." *Matsushita,* 475 U.S. at 586; *see also* Fed. R. Civ. P. 56(e). In a case such

10   as this, the prisoner must show that "the prison authorities' retaliatory action did not advance

11   legitimate goals of the correctional institution or was not tailored narrowly enough to achieve

12   such goals." *Rizzo,* 778 F.2d at 532. Plaintiff bears the burden of proving "that there were no

13   legitimate correctional purposes motivating the actions he complains of." *Pratt,* 65 F.3d at 808.

14        In his opposition to defendants' motion, plaintiff alleges that the conduct and statements

15   made by defendant Roiko did not advance a legitimate correctional goal and that defendant

16   Roiko falsely infracted plaintiff because the paperwork was not personal property of other

17   inmates. Dkt. 49 at 5-7, 9-10. Plaintiff responds that he has obtained additional evidence from a

18   DOC property expert, Sgt. Todd Coleman. Dkt. 49 at 10-11. Plaintiff contends that the grievance

19   he submitted to Sgt. Coleman, in which Sgt. Coleman responded to plaintiff that grievances and

20   letters are not labeled as personal property, shows that there is an issue of material fact. *Id.;* Dkt.

21   49 at Exhibit 5.

22        However, other than his own allegation, plaintiff has failed to present any evidence that

23   defendant Roiko issued the infraction because she thought that plaintiff was a frequent litigator

24

1   or because of his statements to Mr. Carr and Mr. Lowry. Instead, the evidence shows that

2   defendant Roiko issued the infraction because she believed that plaintiff wrongfully possessed

3   the legal documents of other inmates, in violation of DOC policies. *See Wood,* 753 F.3d at 904–

4   05 (speculation on defendant's motive is insufficient to defeat summary judgment).

5          Although the Ninth Circuit has held that "prison officials may not defeat a retaliation

6   claim on summary judgment simply by articulating a general justification for a neutral process,"

7   *Bruce v. Ylst,* 351 F.3d 1283, 1289 (9th Cir. 2003), this case is not like *Bruce* because here, there

8   is an absence of evidence that defendant Roiko had a retaliatory motive. *See id.* (specifying that a

9   general justification for a neutral process cannot defeat a retaliation claim when there is also a

10  genuine issue of material fact as to retaliatory motive). It also appears that plaintiff contends that

11  because the infraction was ultimately dismissed, it must have been false and that this should be

12  considered circumstantial evidence of a retaliatory motive, *see* Dkt. 49 at 3 (*citing Hines v.

13  Gomez,* 108 F.3d 265, 269 (9th Cir. 1997)). However, that case does not stand for the proposition

14  that a retaliatory motive may be inferred every time a prison official is aware that an inmate filed

15  a lawsuit or grievance or an infraction is dismissed. Plaintiff also cites to several non-binding

16  cases in support of his contentions, however, these cases do not support a finding that

17  defendants' motion for summary judgment should be denied or that there is an issue of material

18  fact. Dkt. 49 at 3-7 (*citing Shariff v. Poole,* 689 F.Supp. 2d 470, 479 (W.D. NY 2010)

19  (confiscation of a prisoner's own grievance); *Shakur v. Selsky,* 391 F.3d 106, 116 (2d Cir. 2004)

20  (when a prison official ignores procedures, the official must demonstrate reasonable justification

21  for doing so)).

22         Plaintiff has not alleged or provided any specific facts suggesting that defendant Roiko's

23  actions did not advance legitimate penological goals, as was his burden. Plaintiff's pleadings are

24

1   considered a valid affidavit to oppose summary judgment, but his first amended complaint and

2   declaration do not establish facts within plaintiff's knowledge which create a material issue of

3   triable fact.

4        Based on the foregoing, plaintiff has not presented evidence demonstrating an issue of

5   material fact that defendant Roiko retaliated against him.  The undersigned recommends that

6   summary judgment be granted as to this claim.  The Court also recommends denying injunctive

7   relief as to any claims against defendant Roiko.

8        **2.  <u>Defendants Warner and Glebe – Individual Capacity</u>**[1]

9        In his third amended complaint, plaintiff alleges that defendant Warner is the secretary of

10  the DOC and responsible for management of the DOC. Dkt. 23 at 2. Plaintiff also alleges that

11  defendant Warner refused to "initiate remedial action: i.e., to train, supervise and control, [DOC]

12  personnel, after having reviewed 41 grievances alleging retaliation and after having reviewed the

13  corresponding 41 AG-163 forms and the corresponding 41 civil rights cases …." *Id.* at 18. *See*

14  *also id.* at 17, 19.  Plaintiff alleges that defendant Warner had a duty to ensure that plaintiff's

15  outgoing legal mail was not read, and that he is responsible for the acts of defendant Roiko. *Id.* at

16  6, 16. Plaintiff alleges that defendant Warner knew, or should have known that there was a

17  custom, routine or practice in which DOC employees retaliated against inmates. *Id.* at 13-14.

18       Plaintiff alleges that defendant Glebe is the superintendent of SCCC and was responsible

19  for the supervision and management of the facility. *Id.* at 2. Plaintiff alleges that defendant Glebe

20  is responsible for enforcement of DOC Policy 590.500. *Id.* at 8.  Plaintiff alleges that defendant

21  Glebe had a duty to ensure that plaintiff's legal mail was not read by defendant Roiko. *Id.* at 8,

22  16.

23  ――――――――――――――――

24       [1] The Court previously dismissed plaintiff's official capacity claims against defendants Warner and Glebe.
Dkt. 24.

REPORT AND RECOMMENDATION - 14

1   There is no vicarious liability under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675– 76

2 (2009). Therefore, a plaintiff must show that the defendant personally participated in the alleged

3 unconstitutional action. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). To be liable, the

4 defendant must have committed an affirmative act, participated in another's affirmative act, or

5 failed to perform an act that she was legally required to do. *Johnson v. Duffy*, 588 F.2d 740, 743–

6 44 (9th Cir. 1978). "A supervisor is only liable for the constitutional violations of his

7 subordinates if the supervisor participated in or directed the violations, or knew of the violations

8 and failed to act to prevent them." *Taylor*, 880 F.2d at 1045.

9   Because the Court finds that plaintiff cannot survive defendants' motion for summary

10 judgment as to his claim of retaliation against defendant Roiko, there is no constitutional

11 deprivation for which defendants Warner and Glebe might be liable. Thus, defendants' motion

12 for summary should be granted as to this claim. The Court also recommends denying injunctive

13 relief against defendants Warner and Glebe.

14 **B. Qualified Immunity**

15   As the Court has concluded that plaintiff failed to raise material issues of fact relating to

16 his constitutional claim of retaliation, it is not necessary to address the question of qualified

17 immunity.

18 **C. State Law Claims**

19   The Court previously dismissed plaintiff's state law claims, but allowed plaintiff to file

20 an amended complaint to allege facts, if any, to support the basis for his state law claims. Dkt.

21 16. Plaintiff was advised that he should clearly establish what issue his state law claim raises and

22 whether it is related to his federal claims. *Id.*

23

24

REPORT AND RECOMMENDATION - 15

1    A federal court may retain jurisdiction of the pendant state claims even if the federal

2    claims over which it had original jurisdiction are dismissed. *Brady v. Brown,* 51 F.3d 810, 816

3    (9th Cir. 1995). Where the court has dismissed all claims over which the court has original

4    jurisdiction, the court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).

5    "The decision to retain jurisdiction of state law claims is within the district court's discretion,

6    weighing factors such as economy, convenience, fairness, and comity." *Brady,* 51 F.3d at 816.

7    Defendants argue that plaintiff's state law claims should be dismissed without prejudice

8    because they are better suited to state court disposition due to their vague, novel and complex

9    nature. Dkt. 44 at 20. In plaintiff's response to defendant's motion for summary judgment, he

10   asks that the Court dismiss his state law claims without prejudice in order to allow plaintiff to

11   address those claims in state court. Dkt. 49 at 11-12.  The Court interprets plaintiff's response as

12   a concession to defendants' argument for dismissal without prejudice. Thus, the Court

13   recommends that defendants' motion for summary judgment be granted as to this claim and that

14   plaintiff's state law claims be dismissed without prejudice.

15                                  **CONCLUSION**

16   Based on the foregoing, the undersigned recommends defendants' Motion for Summary

17   Judgment (Dkt. 44) be granted and this action be dismissed. The undersigned recommends that

18   plaintiff's state law claims be dismissed without prejudice. The undersigned recommends

19   denying all other pending motions as moot. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

20   P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written

21   objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

22   objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

23

24

1    Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the

2    matter for consideration on **December 16, 2016**, as noted in the caption.

3        Dated this 22nd day of November, 2016.

4

5                                                        _____
                                                         J. Richard Creatura
6                                                        United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24